**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ANTHONY MICHAEL FELIZ,<br><br>    Debtor.<br><br>INREACH, INC.,<br><br>    Appellant,<br><br>v.<br><br>ANTHONY MICHAEL FELIZ,<br><br>    Appellee. | Bankruptcy No. 05-35037 (KCF)<br><br><br>CIVIL ACTION NO. 06-2095 (MLC)<br><br>**MEMORANDUM OPINION** |

Inreach, Inc. ("Inreach") appeals from an order of the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") entered on April 7, 2006 denying its motion to convert the bankruptcy case of Anthony Michael Feliz ("Feliz") from chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § ("Section") 101, et seq., ("Bankruptcy Code") to chapter 7 ("Conversion Order").  (Bankr. No. 05-35037, dkt. entry no. 27.) Inreach also appeals from the Bankruptcy Court's May 11, 2006 order, which confirmed Feliz's chapter 13 reorganization plan ("Confirmation Order").  (Bankr. No. 05-35037, dkt. entry no. 35.)  For the reasons stated herein, this Court will affirm both the Conversion Order and the Confirmation Order.

**BACKGROUND**

Feliz filed a voluntary chapter 13 bankruptcy petition with the Bankruptcy Court on August 4, 2005. (Bankr. No. 05-35037, dkt. entry no. 1.)[1] The Bankruptcy Court appointed Michael B. Kaplan as the chapter 13 trustee on August 5, 2005. (Bankr. No. 05-35037, dkt. entry no. 3.) Inreach, a nonprofit corporation that provides transportation services to the elderly and disabled, filed a proof of claim against Feliz listing an unsecured, nonpriority claim in the amount of $139,256.82 arising from a state court judgment for breach of contract and misrepresentation that Inreach had previously obtained against Feliz. (Inreach App., at 24.) Inreach also commenced an adversary proceeding against Feliz, arguing that he had engaged in fraudulent conduct while acting as its insurance broker.[2] (Id. at 9-14; Inreach Br., at 7.) Specifically, Inreach alleged that it had employed Feliz in the spring of 2001 to obtain insurance for the period from May 16, 2001 to May 16, 2002 for

---

[1] This was Feliz's second petition for bankruptcy relief; he filed his first chapter 13 bankruptcy petition on February 27, 2004. (Inreach App., at 1-2.) The Bankruptcy Court dismissed that petition on February 14, 2005 because Feliz failed to (1) "make all required pre-confirmation payments to the Trustee", (2) prosecute the bankruptcy case, and (3) attend the confirmation hearing. (Inreach App., at 15-26.)

[2] Inreach filed this adversary proceeding in Feliz's first chapter 13 bankruptcy case on March 24, 2004. (Inreach Br., at 4.) However, that adversary proceeding and all documents previously filed thereunder were made a part of Feliz' second chapter 13 bankruptcy case by order of the Bankruptcy Court dated October 6, 2005. (Id. at 4-5; Inreach Appendix, at 22-23.)

2

its fleet of vans.  (Inreach Br., at 10.)  Inreach further alleged that "on or about August 1, 2001, the insurance company canceled [its] policy and returned to [Feliz] the sum of $134,300.46" but Feliz did not notify Inreach that the policy had been cancelled or that the funds had been returned.  (Inreach App., at 10-11.)  Feliz also neither "offered any return of the monies nor accounted to [Inreach] for any monies kept."  (Id. at 13.)  Accordingly, Inreach requested that the Bankruptcy Court, inter alia, (1) deny Feliz a discharge with respect to the amounts he owes to Inreach, (2) give Inreach's claim against Feliz priority status, and (3) order a "cram down of the two mortgages placed on [Feliz's] real estate located at 522 Brighton Avenue, Spring Lake, NJ".  (Id. at 14.)

Feliz filed his First Modified Chapter 13 Plan ("Plan") on December 21, 2005.  (Bankr. No. 05-35037, dkt. entry no. 17.)  On January 18, 2006, Inreach moved to convert Feliz's chapter 13 bankruptcy case to a case under chapter 7 of the Bankruptcy Code.  (Inreach Br., at 5.)  Further, Inreach objected to confirmation of the Plan.  (Id.)

The Bankruptcy Court held a hearing on April 5, 2006 ("4-5-06 Hearing") on Inreach's motion to convert and its objections to confirmation of the Plan, which the court deemed "conceptually related".  (4-5-06 Hearing Tr., at 2.)  After hearing from both parties, the Bankruptcy Court concluded that Inreach had not

3

established "cause" for conversion.  (Id. at 13.)  Further, the Bankruptcy Court dismissed Inreach's adversary proceeding against Feliz because all of the debts discussed in its complaint were dischargeable under Section 1328 of the Bankruptcy Code.  (Id. at 15; Feliz Br., at 2.)  Thereafter, the Bankruptcy Court entered the Conversion Order, which denied the motion to convert.  (Inreach Br. at 5-6; Inreach App., at 65-66.)  Inreach timely appealed the Conversion Order and moved for a Bankruptcy Court order staying confirmation of Feliz's Plan pending its appeal.  (Inreach Br., at 6; Inreach App., at 69.)  The Bankruptcy Court denied the motion to stay confirmation of the Plan on May 4, 2006, and confirmed the Plan on May 11, 2006.  (Inreach Br., at 6; Inreach App., at 73-77.)  Inreach timely appealed the Confirmation Order, and this appeal was consolidated with its appeal of the Conversion Order.  (Inreach Br., at 6.)

## DISCUSSION

### I.   Preparation of the Record on Appeal

Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8006 requires an appellant, within ten days after filing a notice of appeal, to "file with the [Bankruptcy Court] clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented."  Fed.R.Bankr.P 8006.  Also, Bankruptcy Rule 8006 states that "[w]ithin 10 days after the service of the appellant's statement

4

the appellee <u>may</u> file and serve on the appellant a designation of additional items to be included in the record on appeal." <u>Id.</u> (emphasis added). In addition to the items designated by the parties and a statement of issues, Bankruptcy Rule 8006 further requires that the record contain the "notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact and conclusions of law of the [Bankruptcy Court]." <u>Id.</u> Bankruptcy Rule 8006 also directs appellants to (1) "provide to the [Bankruptcy Court] clerk a copy of the items designated," and (2) arrange for any transcripts to be delivered to the clerk.[3] <u>Id.</u> The rule then instructs all parties to "take any other action necessary to enable the [Bankruptcy Court] clerk to assemble and transmit the record." <u>Id.</u>

Inreach, as the appellant, bears the burden of providing a complete record on appeal. <u>See, e.g.</u>, <u>Zer-Ilan v. Frankford (In re CPDC Inc.)</u>, 221 F.3d 693, 698 (5th Cir. 2000) (explaining that "burden of creating an adequate record rests with the appellant" because "the purpose of the record designation requirement is to provide the reviewing court with an adequate basis for evaluating the appellant's claims on appeal"). Inreach has complied with part of Bankruptcy Rule 8006 by submitting to the Bankruptcy

---

[3] Specifically, Bankruptcy Rule 8006 requires the party to "file with the [Bankruptcy Court] clerk a written request for the transcript and make satisfactory arrangements for payment of its cost." <u>Id.</u>

Court a Designation of Record and Statement of Issues for Appeal with respect to both appealed orders.  (Bankr. No. 05-35037, dkt entry nos. 30, 31, 38, & 39.)  Inreach also submitted to this Court a Designation of Record and Statement of Issues for Appeal with respect to its appeal of the Conversion Order and a Counter-Designation of Additional Items to be Included in the Record on Appeal with respect to its appeal of the Confirmation Order. (Dkt. entry nos. 2 & 4.)  However, Inreach failed to arrange for a transcript of the 4-5-06 Hearing, which contains the Bankruptcy Court's findings with respect to its motion to convert and objection to confirmation of the Plan, to be delivered to this Court.  See Fed.R.Bankr.P. 8006 (requiring that record on appeal contain all opinions, findings of fact and conclusions of law of Bankruptcy Court relating to such appeal).  Inreach also failed to provide this Court with copies of its motion to convert and its objection to confirmation of the Plan, which form the basis of its appeals of the Conversion Order and the Confirmation Order.

    Inreach filed a copy of the Bankruptcy Court's docket sheet with its Notice of Appeal of the Conversion Order.  (Dkt. entry no. 1.)  However, the mere inclusion of a copy of the docket sheet is insufficient to satisfy Bankruptcy Rule 8006.  If Inreach wanted copies of the entire Bankruptcy Court docket, including its motion to convert, its objection to the Plan, and

the transcript of the 4-5-06 Hearing, to be included in the record, it should have filed the proper designation with the Clerk of the Bankruptcy Court and made arrangements with the Clerk for copying.  Further, although Inreach certified in its Designation of Record and Statement of Issues for Appeal that it "ordered the transcript of the motion before Judge Ferguson from Cole Transcriptions with the required deposit", it remains its responsibility to make arrangements with the transcriber and the clerk of the Bankruptcy Court to have that transcript provided to this Court.  See Fed.R.Bankr.P. 8006 (explaining that appellant must designate record on appeal and such record must contain all opinions and conclusions of the Bankruptcy Court).  Inreach, however, took no steps to provide the Court with a proper record, which would include its motion to convert, objection to the Plan, and the transcript of the 4-5-06 Hearing.[4]  Nevertheless, the Court has undertaken the task of reviewing the record to the furthest extent possible by relying on the documents listed on the Bankruptcy Court's docket sheet.

---

[4] The Court notes that Inreach did provide an Appendix to its brief, which includes most of the documents pertaining to the two appealed orders.  However, Bankruptcy Rules 8009 and 8010, which provide the requirements for appellate briefs, do not contemplate the inclusion of such an Appendix with a brief on an appeal to a district court.  See Fed.R.Bankr.P. 8009 & 8010. Instead, an Appendix is required only when the appeal is to a bankruptcy appellate panel.  See Fed.R.Bankr.P. 8009(b).

**II.  Jurisdiction and Standard of Review**

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees.  28 U.S.C. § 158(a).  A district court reviews a bankruptcy court's "legal determination de novo, its factual findings for clear error[,] and its exercise of discretion for an abuse thereof."  In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000); see Fed.R.Bankr.P. 8013 ("On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.")  Also, the Court, when addressing mixed questions of law and fact, divides the questions into their respective components and applies the appropriate standard to each.  In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

**III. Legal Standards[5]**

    **A.   Legal Standards Governing Conversion**

The Court may convert a bankruptcy case filed under chapter 13 to a case under chapter 7 of the Bankruptcy Code for "cause", and after notice and a hearing, if a party in interest requests

---

[5] Feliz filed his chapter 13 bankruptcy petition prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  See 109 P.L. 8, 119 Stat. 23 (2005).  Many of the Bankruptcy Code provisions discussed in this Legal Standards section were later amended by that Act including Sections 1307(c), 1328(a), and 523(a).

such a conversion.  11 U.S.C. § 1307(c).  The Bankruptcy Code states that "cause" for conversion includes (1) unreasonable delay by the debtor, (2) the debtor's failure to pay required fees or make required payments under a confirmed plan, (3) denial or revocation of plan confirmation, (4) the debtor defaulting on a material plan term, and (5) plan termination by reason of a condition specified in the plan.  <u>Id.</u>  However, the Court may consider matters other than those enumerated in Section 1307(c) as grounds for conversion.  <u>In re Lilley</u>, 91 F.3d 491, 494 (3d Cir. 1996).

Section 1328(a) provides that after the debtor completes all payments required by a confirmed plan, the Court must grant the debtor a discharge of all debts provided for by the plan, except, <u>inter</u> <u>alia</u>, alimony or its equivalent, child support, education loans provided by the government, and debts arising from a death or personal injury caused by the debtor while driving intoxicated.  11 U.S.C. §§ 1328(a) & 523(a)(5), (8), (9).  Courts cannot "broaden the list of non-dischargeable debts in a Chapter 13 reorganization beyond those enumerated in section 1328(a)." <u>In re Lilley</u>, 91 F.3d at 495.

Section 523(a)(4), which refers to debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny", and Section 523(a)(6), which refers to debts resulting from "willful and malicious injury by the debtor to

9

another entity or to the property of another entity", are not included in Section 1328(a)'s enumerated exceptions to discharge. 11 U.S.C. §§ 523(a)(4), (a)(6). Instead, these provisions provide exceptions to discharge in cases brought under chapter 7, chapter 11, or chapter 12 of the Bankruptcy Code, or cases brought under chapter 13 where the debtor did not complete all payments under the confirmed plan. See 11 U.S.C. §§ 523(a) & 1328(b). Accordingly, reading Sections 523(a)(4) and (a)(6) in conjunction with Section 1328(a) suggests that debts incurred as a result of either fraud or willful and malicious injury caused by the debtor are still dischargeable under chapter 13 if the debtor completes the reorganization plan. See In re Lilley, 91 F.3d at 495 (reaching analogous conclusion that Section 1328(a) and Section 523(a)(1)(C) when read together demonstrate that Congress intended that tax-related debts would be dischargeable under chapter 13). Thus, because allegations that the debtor committed fraud or willfully and maliciously injured another do not protect a debt incurred as a result of such conduct from discharge under chapter 13, such allegations also cannot constitute "cause" for conversion of a case from chapter 13 to chapter 7. Id. ("The same normative considerations . . . are involved at the dismissal and discharge stages. It is therefore wholly implausible that Congress would hold that the type of conduct in which [the debtor] admittedly engaged is so egregious as to warrant dismissal [or conversion] of his petition, but

10

benign enough that the debt incurred as a result of his conduct would be dischargeable. . . .").

A finding that a chapter 13 petition was not filed in good faith, however, does constitute sufficient "cause" for conversion under section 1307(c) even though chapter 13 does not contain an explicit "good faith" requirement.  In re Lilley, 91 F.3d at 496; N.J. Lawyers' Fund for Client Prot. v. Goddard, 212 B.R. 233, 237-38 (D.N.J. 1997) ("A finding that a petition was not filed in good faith . . . can lead to an order to convert the case to a proceeding under Chapter 7 of the Bankruptcy Code.").  The Court must consider the totality of the circumstances in determining whether a chapter 13 bankruptcy petition was filed in good faith.  In re Lilley, 91 F.3d at 496.  Relevant factors include (1) the nature of the debt, (2) the timing of the filing, (3) how the debt arose, (4) how the debtor's creditors were affected, (5) the debtor's prepetition and postpetition treatment of creditors, and (6) whether the debtor was forthcoming with the Bankruptcy Court and creditors.  Id.; Goddard, 212 B.R. at 238.  Thus, determining whether a chapter 13 petition was filed in good faith requires a fact-intensive inquiry that is "committed to the sound discretion of the bankruptcy court."  Myers v. S. Med. Supply Co., 334 B.R. 136, 142 (E.D. Pa. 2005).

11

### B. Legal Standards Governing Plan Confirmation

The Court must confirm a debtor's chapter 13 plan if (1) it complies with all provisions of the Bankruptcy Code, (2) all required fees have been paid, (3) <u>it was proposed in good faith</u>, (4) unsecured creditors will receive more under the plan than they would if the case were converted to chapter 7 of the Bankruptcy Code, (5) each secured creditor has either accepted the plan, retained his or her lien under the plan, or the debtor has surrendered the property securing the creditor's claim to the creditor, and (6) the debtor will be able to make all payments and otherwise comply with the plan.  11 U.S.C. § 1325(a) (emphasis added).

"Because the Code does not contain a definition of 'good faith,' courts have long struggled with the appropriate parameters for the requisite inquiry into the debtor's motive and intentions in proposing a chapter 13 plan."  <u>Goddard</u>, 212 B.R. at 239 (citations omitted).  The inquiry principally focuses on whether the debtor has (1) stated debts and expenses accurately, (2) made any fraudulent misrepresentations to mislead the Bankruptcy Court, or (3) unfairly manipulated the Bankruptcy Code.  <u>Id.</u> at 240.  The debtor's pre-filing conduct is relevant to the Court's good faith inquiry but is not in any way determinative.  <u>Id.</u> at 241 (vacating and remanding bankruptcy court order because bankruptcy court expressly declined to

consider debtor's pre-filing conduct in determining whether plan was proposed in good faith). However, the Court should not consider whether a debt would be nondischargeable in a chapter 7 proceeding when determining whether a plan was filed in good faith under Section 1325(a). Id. at 240. Thus, the Court must consider the totality of the circumstances in determining whether a plan was proposed in good faith. Id. at 241.

**IV.   Analysis**

Inreach argues that it presented the Bankruptcy Court with sufficient evidence demonstrating that Feliz acted in bad faith both prepetition and postpetition, and thus, the Bankruptcy Court should have held a plenary hearing before denying its request for conversion to chapter 7 and confirming the Plan. (See Inreach Br., at 13 & 17.) Specifically, Inreach alleges that Feliz's prepetition conduct caused its insurance policy to be cancelled, and he "pocketed $31,500.00 of [Inreach's] money seven months after the cancellation and never told [Inreach] that no insurance was in effect. By that time, he had retained $117,796.34 of Inreach's money." (Id.) With respect to Feliz's postpetition conduct, Inreach alleges that, inter alia, "he did not make full disclosure of his assets, was not cooperative in the discovery process, and was guilty of pre-filing defalcation of moneys as a fiduciary." (Id. at 16.) In contrast, Feliz argues that (1) the 4-5-06 Hearing constituted a "plenary" hearing, and (2) even if

13

he "had committed pre-bankruptcy fraud or intentional tort, such conduct is not a bar to discharge under Chapter 13 because the discharge provisions of section 1328 of the Bankruptcy Code are far broader than under Chapter 7." (Feliz Br., at 5-6.)

**A.   The Conversion Order**

The Bankruptcy Court, after hearing argument from Inreach's counsel at the 4-5-06 Hearing, explained that:

> [u]nder the laws that stood at the time the petition was filed a Chapter 13 debtor who successfully completes a plan gets a discharge of all debts except of the kind specified in 523(a)(5), that is spousal support; 523(a)(8) student loans; or, 523(a)(9) death or personal injury resulting from driving or operating a vehicle under the influence.  Debts incurred by fraud, by willful and malicious injury, by negligence, by breach of fiduciary duty, they're all dischargeable if the debtor completes his plan as proposed.

(4-5-06 Hearing Tr., at 12.)  The Bankruptcy Court then concluded that it is not "bad faith" for a debtor to assert his rights under the Bankruptcy Code, or "seek to discharge otherwise nondischargeable debt through a Chapter 13". (Id. at 12-13.) Therefore, the Bankruptcy Court held that Inreach had not established "cause" for conversion. (Id. at 13.)  Further, it dismissed Inreach's adversary proceeding against Feliz because all the nondischargeability grounds asserted in the complaint were not applicable to a chapter 13 case.  (Id. at 15.)

Inreach has not cited any case suggesting that a bankruptcy court must conduct a plenary hearing before ruling on a motion to

convert. It also has not explained why the 4-5-06 Hearing was insufficient for this purpose. In its brief in support of its motion to convert, which it submitted to the Bankruptcy Court, Inreach argued that Feliz's prepetition conduct with respect to it was egregious, and thus, his bankruptcy case should be converted to chapter 7. (Bankr. No. 05-35037, dkt. entry no. 19, Mem. of Law, at 4.) However, as discussed above, allegations that a bankruptcy debtor incurred a prepetition debt as a result of fraud or willful and malicious conduct are not sufficient to establish "cause" for converting the debtor's bankruptcy case from chapter 13 to chapter 7. See In re Lilley, 91 F.3d at 495. Thus, Feliz's prepetition conduct with respect to Inreach cannot provide a sufficient basis for conversion.

The Bankruptcy Court, at the 4-5-06 Hearing, permitted Inreach's counsel to set forth the basis of its postpetition bad faith allegations against Feliz. (4-5-06 Hearing Tr., at 3-11.) Accordingly, Inreach argued that Feliz (1) testified at his deposition that he transferred a portion of Inreach's money to his former attorney but now claims he cannot locate that money, (2) failed to provide requested discovery, (3) failed to disclose assets, and (4) is attempting to use his chapter 13 bankruptcy case to avoid Inreach's state court judgment. (Id. at 3-8 & 10-11). Thus, Inreach was given the opportunity, both through its papers and the 4-5-06 Hearing, to describe for the Bankruptcy

15

Court (1) how Feliz's debt to it arose, (2) the circumstances that allegedly influenced the timing of Feliz's filing of his first and second bankruptcy petitions, (3) how it has been affected by Feliz's conduct, and (4) its basis for arguing that Feliz has not been forthcoming with the Bankruptcy Court and his creditors.  See In re Lilley, 91 F.3d at 496; Goddard, 212 B.R. at 238.  Nevertheless, the Bankruptcy Court, in its discretion, determined that Inreach had not demonstrated that Feliz filed his chapter 13 bankruptcy petition in bad faith.  (4-5-06 Hearing Tr., at 12-13 (noting that it is not bad faith for debtor to assert rights given to it under Bankruptcy Code and concluding that Inreach had not established cause for conversion).)  See Myers, 334 B.R. at 142 (stating that determining whether chapter 13 petition was filed in good faith requires fact-intensive inquiry that is "committed to the sound discretion of the bankruptcy court").  Thus, because the Bankruptcy Court considered the available evidence before concluding, in its discretion, that Inreach had not demonstrated that Feliz filed his bankruptcy petition in bad faith, this Court finds that it did not err in ruling that there was no "cause" for conversion. See id. at 145 ("A bankruptcy court need not provide and 'exhaustive discussion of its reasoning' when dismissing or converting a case." (citations omitted)).

16

### B.     The Confirmation Order

The Bankruptcy Court noted that Inreach's objection to confirmation of the Plan was also premised upon allegations that Feliz acted in bad faith.  (4-5-06 Hearing Tr., at 13.)  See 11 U.S.C. § 1325(a)(3) (requiring bankruptcy plan to be proposed in good faith).  The Bankruptcy Court stated that even if it accepts as true the alleged fraud, willful and egregious conduct, and defalcation that underlie Inreach's state court judgment against Feliz, Feliz is still "permitted to be a debtor and that per se is not bad faith."  (Id.)  The Bankruptcy Court acknowledged that Feliz had failed to produce certain tax returns to Inreach, but explained that the returns were not really relevant because Inreach's claim is dischargeable.  (Id.)  Further, it refused to find that Feliz had failed to disclose assets, stating "to the extent that there are misidentifications of values or of amounts of claims or of assets, as long as the asset itself has been disclosed, again, without more I'm simply not willing to find that he has failed to disclose assets such that I can't confirm the plan."  (Id. at 13-14.)

Inreach, in appealing from the Confirmation Order, alleges that Feliz acted with bad faith in failing to inform it that its insurance policy had been cancelled while continuing to receive money in connection with the policy.  (Inreach Br., at 13.)  Inreach also alleges that during the pendency of the bankruptcy

17

case, Feliz "has been either negligent or evasive in his failure to provide discovery [to Inreach] that would lead to his having to admit that he converted Inreach's money to his own use." (Id. at 16.)  Nevertheless, this Court finds that the Bankruptcy Court did not err in ruling that these allegations do not establish that the Plan was proposed in bad faith under the inquiry set forth in Goddard.  See 212 B.R. at 240 (explaining that inquiry into whether chapter 13 plan was proposed in good faith "has at its heart the determination of whether under the circumstances of the entire case there has been an abuse of the 'provisions, purpose, or spirit of [Chapter 13]' in the proposed plan" (citations omitted)).

Inreach has not alleged that Feliz failed to list his debts and expenses accurately.  See Goddard, 212 B.R. at 240.  Further, the Bankruptcy Court did not commit "clear error" when it refused to find that Feliz failed to disclose any assets or made any other fraudulent misrepresentation to the Bankruptcy Court simply because he misstated the value of one particular asset.  (4-5-06 Hearing Tr., at 13.)  See Goddard, 212 B.R. at 240.  Third, the Bankruptcy Court properly determined that Feliz's failure to turn over tax returns to Inreach is not relevant to the issue of whether the Plan was proposed in good faith.  (4-5-06 Hearing Tr., at 13.)  Similarly, the Bankruptcy Court implied that Feliz's prepetition conduct towards Inreach is relevant in

18

determining the appropriate amount of Inreach's claim against Feliz but is not particularly relevant in determining whether the Plan should be confirmed.  (See id. (noting that even if it assumes that all of Inreach's allegations of prepetition egregious conduct on the part of Feliz are true, Feliz is still permitted to seek bankruptcy protection).)  See Goddard, 212 B.R. at 241 (acknowledging that "even the most egregious pre-petition misconduct does not necessarily preclude good faith").

Feliz, in choosing chapter 13 and filing the Plan, is simply taking advantage of rights given to him by the Bankruptcy Code. Such conduct does not constitute bad faith.  See Baldridge v. Cont'l Airlines Holding, Inc., 257 B.R. 658, 666 (Bankr. D. Del. 2000) (stating that it is not bad faith for bankruptcy debtor to assert rights provided by Bankruptcy Code, such as filing of reorganization plan).  Therefore, this Court finds, in light of the totality of the circumstances, that the Bankruptcy Court did not err in denying Inreach's objection that the Plan was not proposed in good faith.  Thus, this Court will affirm the Confirmation Order.

**CONCLUSION**

The Court, for the reasons stated supra, concludes that Inreach has failed to demonstrate that the Bankruptcy Court erred in (1) denying its motion to convert Feliz's bankruptcy case from chapter 13 to chapter 7 of the Bankruptcy Code, and (2) confirming Feliz's chapter 13 Plan.  The Court will issue an appropriate order.

                                    s/ Mary L. Cooper
                                    **MARY L. COOPER**
                                    United States District Judge